Case number 19-1434 Allen Trowbridge versus Jeffrey Woods. Arguments not to exceed 15 minutes per side. Ms. Frank, you may proceed for the appellant. Thank you. Good morning, your honors. May it please the court, my name is Rachel Frank and I represent Allen Trowbridge. At this time, I'd like to reserve three minutes for rebuttal. Okay. The district court clearly erred and it did not adopt the finding of magistrate judge Greeley that Mr. Trowbridge was prejudiced by the deficient performance of his counsel. Failed Mr. Trowbridge. Are you all having just, are you all having a little bit of trouble hearing her? Yeah, if you could speak up a little bit. Just try to, it's not that you're muted or Every part of the criminal justice system failed Mr. Trowbridge. He was denied one of the most basic and important rights designed to protect defendants, the right to know the penalty. Every criminal case begins with an arraignment. The purpose of that arraignment is not only for a defendant to plead guilty or not guilty, but to hear exactly what he is charged with, exactly. That information along with the advice of counsel is what propels a defendant's decision making forward throughout the negotiation process. What is my risk? When would I get out of prison? Will I ever get out? What am I risking if I go to trial? When a defendant is denied that information, it is impossible for that defendant to make any kind of informed decision. And that's what happened here. The result was fundamentally unfair and unjust prejudice for which Mr. Trowbridge is paying the price for the rest of his life. He was told that if convicted at trial, he would go to prison for at least 30 years, probably more, but have the possibility of parole. In reality, due to an amendment in the statute, he faced a mandatory life sentence without the possibility of parole if convicted at trial. The harshest sentence a Michigan court can hand down and the equivalent of Michigan's death penalty. And nobody told him because nobody knew. There's an enormous difference between the possibility of one day being free and the certainty of dying behind bars. So let me ask you a question. So in order for Mr. Trowbridge to have, my understanding is that he could not have entered a no contest plea. He would have had to have pled guilty in order to get a plea bargain. Is that correct? Your Honor, the only reason he could not plead guilty on the day of trial was because it was on the day of trial and passed the final pre-trial conference date. That was the reason the trial court gave for not accepting the plea. Further, he did submit an affidavit during the appellate process stating that if he had known about the penalty he truly faced, he would have entered a guilty plea and made all the necessary factual basis for guilt. Go ahead, Judge Bush. I'm sorry. You're probably going to ask the same question. Go ahead. No, no, you go ahead. I just want to make sure I understand. My understanding was the district court would not accept a no contest plea. Is that not correct? Your Honor, the reason the district court gave... I mean the trial court. The trial court would not accept a... Excuse me. The trial court said they would not accept it because it was past the final pre-trial conference deadline. That was the main reason. So whether Mr. Trowbridge could have event that a no contest plea would not have been accepted, he stated he would have been willing to make a guilty plea and establish a factual basis for guilt. The question I had was the affidavit doesn't come along until the Michigan Supreme Court allows that expansion of the record, correct? Correct. And then Michigan Supreme Court declined review, right? Correct. So the opinion we are left with looking at is the Michigan Court of Appeals opinion, right? That's correct, Your Honor. Okay. The concern... I mean what happened to Mr. Trowbridge was obviously not a good thing. I mean the system isn't supposed to work that way. But given the content of the Michigan Court of Appeals reasoning, I'm having a hard time seeing how this is a wrong that we as a federal appellate court can write. Can you give me your take on the Michigan Court of Appeals opinion? Yes, Your Honor. The Michigan Court of Appeals found that there was not a reasonable probability that had Mr. Trowbridge known about the mandatory life sentence without the possibility parole that he would have accepted the prior plea offer. I think here everyone agrees that the first prong of Strickland was satisfied, that his counsel's performance was so deficient that that first is satisfied. We're dealing with the second prong here, whether or not he suffered prejudice. And the Michigan Court of Appeals decided that he didn't suffer prejudice because they thought he wouldn't have taken it anyway, even if he knew about it. The problem with that is that it's pure speculation. It's speculating about what he would have done if he had known. We have his affidavit saying, if I had known what I was facing, I would have pled guilty. I would have made a factual basis. Second, on the day of trial, he did try to accept a plea offer, not even knowing what he faced. So if he's trying to accept a plea offer on the day of trial, not knowing he's going to go to prison for the rest of his life and never get out if he's convicted at trial, certainly he would have accepted a plea well before that and well before the deadline. Because there is such a difference between a certainty of knowing that you're going to die in prison and the one day getting out. And every part of the criminal justice system here failed him. His attorney failed him when he didn't read the amended statute and he didn't tell him what he was facing. The prosecutor failed him when they also didn't read the amended statute and had no idea of the penalty. The trial court failed him by, again, not knowing the penalty. And once that mistake was realized, by refusing to rectify it, by granting him a new trial. The state appellate courts failed him when they found that he suffered no prejudice. However, Magistrate Greeley did not fail him and found that he did suffer prejudice and recognized the fundamental unfairness of what happened. Unfortunately, the district court did not agree and did not adopt that finding. When a defendant does not know the penalty he is facing and does not know what lies to do, he had no idea that if he were convicted at trial that he would go to prison for the rest of his life and never get out. He thought that whether he was convicted at trial or convicted by a plea, he would one day have the possibility of being freed. To now hold him responsible for making that decision without such vital information would be fundamentally unfair because of the you will get 30 years or more and you probably, it will be a while before you get parole, is a far cry from certainty and it's a far cry from you will certainly die in prison. Fundamental unfairness required him to know what he truly faced. Judge Greeley recognized that and recognized that the lower court's speculation about what he would have done ignores, quote, ignores the fundamental fairness of what occurred. Justice system failed, Mr. Trowbridge. We ask this court to consider whether this egregious failure should be allowed to happen in the U.S. criminal justice system. We ask this court to consider if this is not the kind of prejudice that Strickland was designed to prevent, then what is? We ask this court to allow him to accept the plea offer that would have capped his sentence at 22 and a half years and we ask this court not to fail, Mr. Trowbridge. Unless there are any questions from the panel, I would like to yield the rest of my time. All right, we'll hear from Mr. Banghart-Linn, is that correct? Yes, your honor. Thank you. Your honors, and may it please the court, Linus Banghart-Linn, assistant attorney general for the state of Michigan on behalf of the respondent warden and respectfully requesting that this court affirm the district court's denial of hate. And I'll repeat what we've said in our briefing and I agree with you, Judge Gibbons, and I'll agree with opposing counsel that what happened here was, I think in your words, Judge Gibbons, it wasn't a good thing, right? Everyone failed. But under Lafleur v. Cooper, we know that what we have to do is we have to figure out, we have to figure out what would have happened had he been properly advised. That's the inquiry. It is not a per se rule that when a defendant is misadvised in the plea negotiation process, that that was not the holding of Lafleur v. Cooper. The first prong is you have to ask, would the defendant have taken the plea agreement had he been properly advised? So that is the inquiry that has to be made here. You cannot simply say there was deficient performance and therefore relief. So in looking at that evidence, I think the first thing I do want to address is whether to consider this affidavit at all. I think that even if the affidavit is because of how late it came along, because of its self-serving nature, which goes to its credibility, but also the fact that it wasn't supplied to the trial court when it initially made the decision. It wasn't supplied to the Michigan Court of Appeals when it initially made the decision. And this is a backwards-looking process. This court is not here to determine, if we're speaking technically, is not here to determine whether Mr. Trowbridge was prejudiced. It's here to determine whether the state courts acted unreasonably in finding that he was not prejudiced. And so in order to find that they acted reasonably, you cannot, it would be unfair as Cohen v. Penholster recognized in cases before that, to judge the reason for this decision based on information, especially if it was Trowbridge's decision. And then, can you test that? Counsel, counsel, can you pause for a second? I'm hearing something that's preventing me from hearing your, there's some sort of a feedback or something that's going on. Are the other judges hearing this? I'm hearing it too, and I was also hearing, I can still hear Ms. Frank, but I was hearing it during her argument as well. There's some kind of competing noise here. Okay. I don't know if it's from me, but I'm turning down my volume to see if it helps. I don't know. Sorry. All right. Let's venture forth and see what happens. Okay. Mr. Banghart-Linn, you may proceed. Thank you, Your Honor. And so to, again, not judging the state court's decision, the reasonableness of it based on information that Trowbridge decided not to supply those courts with. He chose not to testify at the Ginter hearing. Let me ask you, just to make sure I understand the sequence of events. The Michigan Court of Appeals decision came down, then Mr. Trowbridge moved to submit his affidavit to the Court of Appeals. I believe that's not correct, Your Honor. I believe the affidavit itself, which is at page ID number 30, there's a caption that is Supreme Court, Michigan Supreme Court. So I believe that it was after he filed his application. And I actually have the docket pulled up. Okay. So it was never filed with the Court of Appeals. It was filed for the first time with the Supreme Court. With the Supreme Court. Correct. Yes, that's correct. And then the Supreme Court did not accept review of the case. Is that correct? That is correct. It's analogous. But the Supreme Court did consider the affidavit, didn't it? Because it allowed the record to be expanded, didn't it? Well, I don't want to seem to be splitting hairs, Your Honor. The court did accept the affidavit. Now to say the court considered the affidavit, I don't know if that's knowable because the court decided not to decide the case, right? And it didn't issue any kind of reasoned opinion. And it didn't issue sort of an unexplained affirmance. It didn't affirm the case, right? It did something analogous to what the Supreme Court faced in Green versus Fisher, which is a case out of Pennsylvania where the Pennsylvania Court of Appeals... Now this was a case about the change in law rather than a change in facts. But the Pennsylvania Intermediate Appellate Court made its decision. And then while it was pending in the Pennsylvania Supreme Court, the law changed. And so the argument was that the Pennsylvania Supreme Court got it wrong based on this change in law. And the Pennsylvania Supreme Court decided not to decide, right? It granted the petition or whatever it was, the application, held argument, and then dismissed the application as improvidently granted. So it... And the U.S. Supreme Court recognized that's not a merits adjudication. That is a decision not to decide. That's Green versus Fisher. That's what happened here. The Michigan Supreme Court made a decision not to decide. And I know there's an inconsistency between Mr. Trowbridge's reply brief, which says you do look to the Michigan Supreme Court decision, and what Ms. Frank just said, which is in answer to George Stevens' question, is no, we actually... The second point is correct. We look to the Michigan Court of Appeals decision. That's the last reason decision. We look to it for the law, which is what Green versus Fisher says, and we also look to it for the facts because we treat those the same. And Green versus Fisher relied on Cullen versus Pinholster, which is about facts. Cullen versus Pinholster relied on Lockyer versus Andrade, and Williams versus Taylor. So we don't bifurcate and say, well, when it's the facts, we look to the State Supreme Court. When it's the law, we look to the State Intermediate Court. We look to the last reason decision. This was the Michigan Court of Appeals decision. They didn't have the affidavit. Trowbridge withheld that. He withheld his testimony, didn't testify at the Ginter hearing, gave no direct evidence of his contemporaneous state of mind at the time that he was considering the plea. So the fact finder, which is the State Trial Court and the State Reviewing Court, the Michigan Court of Appeals, only had the evidence before it, which is that he never, never offered to plead guilty. And there's been certain misstatements, I think, accidental, which is that he tried to plead guilty on the day of trial. He did not try to plead guilty. Now, at the time, the trial court said, I'm not accepting it because of the deadline. Later, the trial court said, I also wouldn't have accepted it because there was no basis for a no contest plea. And the Michigan court rules make clear that a no contest plea requires the consent of the court. So there were actually two separate bases for which he could not have tendered a no, or could not have had a no contest plea accepted. He would have had to plead guilty. There was no indication until he gets to the Michigan Supreme Court and files this affidavit that he would have ever accepted responsibility, that he would have ever stood up in open court and said, yes, I did do these things that I was accused of, which you have to do to plead guilty in Michigan. You have to make- Is that what you hang your hat on as to why there's no prejudice? No. The fact that he never pleaded guilty? I hang my hat on two things in roughly equal way, Your Honor. One is that he never, until much after the fact, never said that he would plead guilty. The only plea he tried to accept was no contest. He lied at trial and said that he didn't do it. He didn't allocute a sentencing. So that's one thing I hang my hat on. The other thing though is the difference between the advice he received and the advice he should have received. And I hear my opposing counsel say 30 years. Well, 30 years was the top of the guideline, but we know from the Ginther hearing that his counsel told him, you're a repeat sex offender against children. You're not going to get paroled at your ERD. 30 years is not the meaningful date here. We're looking at 45 years if you're lucky. That's his mid seventies, right? He's not going to be, he's going to be eligible for parole, right? In his, you know, sixties, I guess, early sixties, late fifties. As far as meaningfully considered for parole, you're looking at your mid seventies. If you're lucky, you're looking at a very good chance of dying in prison. And he rejected 22 and a half years. He'd be out, he'd be out, not eligible for parole, but out free in his early fifties. And he said, I don't want that. I don't want that. Now, maybe it's because he thought he had a chance of acquittal. And we know from United States versus Lee, which is cited in my opponent's is something that, uh, that a defendant can make it, make his decision based on, right? That's the U S Supreme court said, yeah, he really thought, I mean, he didn't think he had a good chance of acquittal, but you know, he wanted an acquittal, right? And so that's one thing. The other thing is that he was not willing to stand up in court, but either way, he rejected a deal that would have probably saved him more than 20 years in prison. And if he was lucky and probably closer to 30 or more, he was probably looking at his natural life in prison, even though on paper, it was a term of year sentence. He was looking at almost certainly a natural life sentence. And he rejected a 22 and a half year cap in order to take his chances either to roll the dice or because he didn't want to stand up and open court and admit what he had done or both. Uh, and either way, because the evidence shows he gave up an offer that would have potentially saved him 23 years in prison. Yeah. That's indicative to show that he would have also rejected an offer that would have. Yeah, it's, it's absolutely right. Potentially even more, but that was enough time that you're saying that, that we can be confident that the state court made the right call. Yeah. Or, well, I think the state court made the right call. I only need to convince you that the state court made a reasonable call. Right. Right. Um, and I would point this court to Smith versus Cook, which is an opinion by judge Larson, that judge Bush, you joined a few months ago, uh, in which, you know, the, the sort of the factual lead up to it was different, but this court considered the fact that he rejected a sentence of, 27 years, um, kind of close to what was rejected in this case, uh, and, and rolled the dice. Um, the Smith, the quote from the case, Smith knew there was a gaping disparity between his possible sentence and the 27 year offer. And he still chose to roll the dice at trial. I would ask this court to look at, uh, Smith versus Cook and consider, I mean, obviously it's not, but, um, as far as for the proposition that this is a relevant consideration that a court could take into consideration in looking at all the circumstances, um, especially when it doesn't have any direct evidence. It has to just look at what it has in front of it. It doesn't have Trowbridge's testimony in front of it. It doesn't have Trowbridge's affidavit in front of it. All it has is what he did, which is he rejected a guilty plea, a guilty plea offer. He rejected a full guilty plea offer that would have saved him at least 20 years in prison. He tried to accept a no contest offer. Um, and, and then he never accepted responsibility until it beat until long past when he should have realized, uh, that it was at his advantage to do so. He never accepted responsibility until he saw the advantage in doing so. And then he submitted his affidavit. It was, it was too late. This court shouldn't consider it. And if it does, it should give it. I mean, it's, it's hard to say what this court should do if it considers it, because again, if you're trying to review the reasonableness of what the state courts did, you have to look at how much weight did they give the affidavit? Well, they couldn't have because they didn't have it. So it, it's almost as if, if you consider the affidavit, you're left, you're left with no way to review the state court's decision. Um, it, it was not pure speculation as the RNR put it, and as O'Connell's and counsel put it for the court. I mean, speculation is required, right? As I said, at the outset of the argument, the inquiry has to be, it's required for the courts to look at what would have happened if part of the job, right. But to say it's pure speculation is false. The, the, the speculation, if you want to call it that, was based on the evidence that the court had before. It was reasonable for the court to consider his failure to accept responsibility, you know, ever at that point, it was reasonable for the court to consider that he had rejected a very advantageous plea offer to lower the trial. Um, and so on, on those bases, um, there's, there's no way to find, uh, that the, that the state courts acted unreasonably under 2254, um, which I think applies, or D1, whichever one applies, that it was unreasonable. Um, and so, um, I'd be glad to answer any, answer any other questions that your honors have. I think we'd have none. Okay. Ms. Frank, you might have your rebuttal time. Thank you. Um, I'd like to briefly touch on the question of the affability, I'm sorry, the admissibility of the affidavit. Um, I, I would like to direct the court's attention to pages five and six of our reply briefs, um, for the relevant case law. But the essential, um, principle is that once the Michigan Court of Appeals adjudicated the claim on the merits, the Michigan Supreme Court is also presumed to have adjudicated it on the merits because that record was expanded. And because they did consider the affidavit, for this court to consider. Um, secondly, um, the Michigan Court of Appeals decision was unreasonable. They cannot hold Mr. Trowbridge accountable for making a decision to reject a plea offer when he did not know what he was facing. Any decision made like that is not an informed decision and he can't now be held responsible for the consequences of that decision. Just out of curiosity, would he be guilty of, if, if we agreed with you and sent this back for a new sentencing, would he also perhaps face perjury charges for what he did if he's going to admit that he did do it now during trial? He said he wasn't, he didn't do it? Uh, Your Honor, that would be, um, up to the prosecuting, prosecuting attorney. But conceivably he might. Yes, Your Honor, he could. Um, here though, I, I want to draw the attention to, um, something opposing counsel said is that he would probably get this certain amount of years. When you're talking about mandatory life in prison, probably is not good enough. Close enough is not good enough when you're talking about a sentence this severe, the harshest sentence Michigan can hand down. Um, what happened here should not happen. It should never happen. Um, and we just asked this court, um, to consider that and to allow him to accept the prior plea offer. And unless there are any questions from the panel, I'd like to yield the rest of my time. We appreciate very much the argument both of you have given. We'll consider the case carefully. Ms. Frank, I see that you're appointed counsel under the Criminal Justice Act. We very much appreciate your having accepted the appointment and your, um, very excellent advocacy on behalf of Mr. Trowbridge. Thank you. Thank you, Your Honor. Thank you both. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Hi, Your Honors. This is Ron, the IT host. The feedback, um, I was watching and it seemed like it came from, uh, the Lansing location. And Judge Herhendrich, I, I accidentally, I hit the mute button to stop the feedback loop. If you, um, uh, have the silver, good. Yeah, I see you just unmuted. So if, um, if it happens again, we'll mute the Lansing location. And then if you'll just unmute with the silver remote control, like you just did, that'll, that'll work to resolve that problem. Okay. Sorry to interrupt. All right. You don't have to explain further if we have a problem, what I'm supposed to do. Okay. I think that they think that the feedback from